## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK LEVIN )<br><br>)<br><br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALTERNATIVE ENERGY HOLDINGS, LLC; )<br>KEVIN T. CARNEY; ROBERT IREY; )<br>JONATHAN FREEZE;  DODARO, MATTA )<br>& CAMBEST, P.C.;   DMC BRADLEY; )<br>MICHAEL J. HAMMOND; )<br>and STEVEN M. TOPRANI, )<br>)<br>Defendants. )<br>) | **CIVIL ACTION NO.:**   20-79 |

## COMPLAINT

Plaintiff, Jack Levin, by and through his undersigned attorneys, hereby files this Complaint against Alternative Energy Holdings, LLC, Kevin T. Carney, Robert Irey, Jonathan Freeze, DMC Bradley, Dodaro, Matta & Cambest, P.C., Michael J. Hammond, and Steven M. Toprani, stating as follows:

## PARTIES

1.     Plaintiff Jack Levin ("Levin") is an adult individual who resides at 46 Hot House Lane, Washington, PA 15301. At the time of the subject investment, Plaintiff Levin lived in the same apartment complex in Canonsburg, PA as Defendants Irey and Freeze.

2.      Defendant Alternative Energy Holdings, LLC ("AEH") was at all times material herein a Florida limited liability company with addresses at 3030 N. Rocky Point Drive, Tampa,

Florida 33607 and 7635 Fields Road, Chagrin Falls, Ohio 44023. As of approximately September 27, 2019, Defendant AEH is in "administrative dissolution" by the Florida Department of Corporations.

3.      Defendant Kevin T. Carney ("Carney") is an adult individual who, upon information and belief, resides at 23317 Williams Avenue, Euclid, OH 44123. At all times material herein, Defendant Carney was the Manager and CEO of Defendant AEH.

4.      Defendant Robert Irey ("Irey") is an adult individual who, upon information and belief, resides at 4000 Mason Lane, Apartment 4409, Pittsburgh, PA 15205. At all times material herein, Defendant Irey was a Manager of Defendant AEH.

5.      Defendant Jonathan Freeze ("Freeze") is an adult individual whose last known address is 3000 Mason Lane, Apartment 3401, Pittsburgh, PA 15205. At all times material herein, Defendant Freeze was a Manager of Defendant AEH. Defendant Freeze was a registered stockbroker from October 1995 to April 2017.  He was permanently barred from the securities industry by the Financial Industry Regulatory Authority ("FINRA") in August 2017.

6.      Defendant Dodaro, Matta & Cambest, P.C. ("DMC") is a law firm located at Southpoint Town Center, 1900 Main Street, Suite 207, Canonsburg, PA 15317.

7.      Defendant DMC holds itself out to the public as a well-established law firm that offers a wide range of legal and advocacy services for both public and private clients, offering legal services across several areas including corporate and business law.

8.      Defendant DMC specifically represents to the public that it has "'boots on the ground' experience" that allows Defendant DMC to meet its clients' needs "in a wide array of energy matters."

9.      Defendant DMC Bradley is a joint venture between Defendant DMC and the

Bradley Law Firm and is located at 1900 Main Street, Suite 207, Canonsburg, PA 15317, and upon information and belief was formed in January 2017.

10.     Defendant DMC Bradley holds itself out to the public as a law firm having "the footprint, knowledge, and experience to provide the highest quality legal services to its clients" and specifically represents that the Bradley Law Firm has "an unparalleled understanding of the specific needs of the market," while Defendant DMC "has been the preeminent municipal and government-relations firm in the region" with the attorneys of Defendant DMC being "extremely diverse in their legal skills."

11.     Defendant DMC Bradley boasts about having more than 50 years of experience in representing energy clients, having the industry knowledge and judgment needed in today's fast paced market, with a veteran team of litigators comprised of former prosecutors and seasoned civil litigators, with a deep understanding of transactional and due diligence matters.  Defendant DMC touts its "hands-on" approach to due diligence.

12.     Defendant Michael J. Hammond ("Hammond") was at all times material herein a partner with Defendants DMC and DMC Bradley.

13.     Defendant Hammond held himself out to the public as being experienced in energy, property and real estate transactions as well as litigation.

14.     Defendant Steven M. Toprani ("Toprani") was at all times material herein a partner with Defendants DMC and DMC Bradley.

15.     Defendant Toprani held himself out to the public as being a former District Attorney with extensive experience in criminal law, litigation, business law, and commercial real estate.

## JURISDICTION AND VENUE

16.      This Court has jurisdiction over the subject matter of this action pursuant to Section

27 of the Securities Exchange Act of 1934, as amended (15 U.S.C. §78(a) *et seq.*) and 28 U.S.C. §1331. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

## FACTS

### Background—Defendants Carney and Freeze

18.     On June 6, 2016, Defendant Carney was indicted by a Grand Jury sitting in Geauga County, Ohio on six (6) counts relating to investments in Global Green Advisor Partners, LLC, a Florida limited liability company for which Defendant Carney was a Manager. Defendant Carney pled guilty to Grand Theft and Forgery on or about December 27, 2016 ("Carney criminal conviction").

19.     Defendant Freeze was a registered securities representative with Fortune Financial Services, Inc. ("Fortune") from July 2015 through April 2017, and offered and sold AEH Notes to his Fortune clients and others.

20.     On or about October 15, 2015, Defendant Freeze entered into a Letter of Acceptance, Waiver and Consent ("AWC") with FINRA whereby he was suspended for ten (10) business days and assessed a $5,000 fine for borrowing money from a customer ("FINRA Suspension").[1]

---

[1] FINRA Rule 3240 governs borrowing between registered brokers and their customers. Borrowing from customers is strictly prohibited unless certain conditions are met.  A registered broker may only borrow from a customer if the broker's member firm has a written policy in place that governs such activity. If there are no written procedures in place at the firm, then no borrowing may occur. If there are written guidelines, the broker must follow all of those internal requirements.  In addition to meeting all internal requirements of the firm, the loan must meet certain criteria expressly laid out in Rule 3240.  Finally, all broker-customer borrowing arrangements must follow certain notification requirements.  A broker seeking to obtain a loan from a customer must notify their member firm of the details of the

21.     On or about June 20, 2017, FINRA notified Defendant Freeze of an investigation of Defendant Freeze relating to his recommendations of variable annuities.  On or about August 14, 2017, Defendant Freeze entered into another AWC with FINRA whereby he was permanently barred from the securities industry in all capacities for refusing to provide documents and information in connection with FINRA's investigation ("FINRA Bar").

**Defendant AEH and the Joint Venture**

22.     On or about May 31, 2016, Defendant AEH purportedly entered into a Joint Venture Agreement with D4 Energy Group ("D4"), whereby Defendant AEH would act as a funding source to provide predevelopment working capital for a series of alternative energy processing plants ("J.V. Agreement").

23.     Defendant Carney signed the J.V. Agreement as the "authorized member" of Defendant AEH, six (6) days before he was indicted by an Ohio Grand Jury.

24.     In or about June 2016, Defendants Carney, Irey, and Freeze, on behalf of Defendant AEH, began to offer and sell investment opportunities to individuals, purportedly to raise funds for the alternative energy processing plants pursuant to the J.V. Agreement. Most of the individuals solicited by Defendants Irey and Freeze were former clients of Defendant Freeze or residents of the apartment complex where Defendants Irey and Freeze resided and knew each other socially or professionally from their mutual ties with the local community.

---

proposed transaction before actually executing the transaction.  At that point, the firm's compliance personnel will be responsible for reviewing the proposed arrangement and determining if it should be approved.  If approval is not expressly given, then the broker must not go forward with the proposed arrangement. This is where Freeze ran afoul of FINRA's regulatory rules and his firm's internal policies.  The October 2015 AWC specifies that Freeze failed to provide his firm with prior notice of the loan and failed to obtain prior written pre-approval for the loan from the firm.

25.     Upon information and belief, Defendant DMC, through Defendant Toprani, began representing Defendants Irey and Freeze in relation to their solicitation of investors to secure financing for "various energy projects" for Defendant AEH, during which period of representation the investments were funneled through two entities controlled by Irey known as The Irey Group LLC and ACES America LLC.

26.     In other words, rather than having investors directly invest in Defendant AEH, Defendants Irey and Freeze were utilizing Promissory Notes and a Memorandum of Understanding which indicated that investors' money was being paid to either The Irey Group LLC or ACES America LLC in order to fund alternative energy projects being operated by Defendant AEH.

27.     Upon information and belief, Defendant DMC, through Defendant Toprani, was initially representing Defendants Irey and Freeze, and then with Defendant Hammond, continued representing Defendants Irey and Freeze during the solicitation of investors on behalf of Defendant AEH during the period of time that investors' money was being diverted into either The Irey Group LLC or ACES America LLC.

28.     Upon information and belief, Defendants DMC and DMC Bradley, through Defendants Toprani and Hammond, subsequently began formal representation of Defendants Carney and AEH during the period of time that Defendants Irey and Freeze began steering investors' money directly into Defendant AEH rather than being funneled through The Irey Group LLC or ACES America LLC.

29.     Upon information and belief, Defendant DMC Bradley was formed in or about January 2017. Thereafter, Defendants DMC and DMC Bradley, through Defendants Toprani and

Hammond, represented Defendants Irey and Freeze, and beginning in approximately April 2017, added Defendants AEH and Carney to the representation.

30.    Upon information and belief, Defendant Toprani was involved in the drafting, review and/or approval of the Memorandum of Understanding initially used to solicit investors on behalf of Defendants AEH, Carney, Irey, and Freeze, and personally met with potential investors in the Defendants DMC and DMC Bradley offices located at 1900 Main Street, Suite 207, Canonsburg, PA 15317 to solicit their investments.

31.    Upon information and belief, Defendants Toprani and/or Hammond were subsequently involved in the drafting, review and/or approval of the more formal promissory notes ("AEH Notes") and membership unit purchase agreements ("Membership Agreements") used to memorialize investments in Defendant AEH.

32.    In the alternative, upon information and belief, Defendants Toprani and/or Hammond were aware of their co-Defendants' use of the Memorandum of Understanding and Promissory Notes to memorialize investments in The Irey Group, LLC, ACES America, LLC, and Defendant AEH and condoned the use of said agreements.

### Sale of  AEH Note to Plaintiff Levin

33.    Plaintiff Levin is currently 51 years old and is an IT professional.

34.    In or about May 2017, Defendants Irey and Freeze discussed an investment opportunity in Defendant AEH with Plaintiff Levin when all three were living in the same apartment complex in Canonsburg, PA. Defendants Irey and Freeze advised Plaintiff Levin that the invested funds would be used for an alternative energy processing plant in Greenville, SC pursuant to a Joint Venture Agreement between Defendant AEH and D4. Defendant Irey provided Plaintiff Levin with

various documents by email, including a three-page report ("Report") purportedly prepared by Defendants Irey and Carney which represented as follows:

      a.     That $137 million had already been raised;

      b.     That Defendant AEH is seeking additional investments to provide ongoing financing in the amount of at least $130 million for the project facilities; and

      c.     That the first plant will be fully operational in fiscal 2019 with annual revenues of $41.8 million.

35.     Defendant Irey advised Plaintiff Levin that the investment "was a sure thing" and was backed by "big money coming in" from notable investors, and that Plaintiff Levin would be paid back in the short term and would make money from D4 plants as they were built.

36.     As a result of discussions with Defendants Irey, Freeze, and Carney, and reviewing the Report and other documents provided by Defendant Irey, Plaintiff Levin decided to invest $50,000 in Defendant AEH.

37     In order to come up with the funds to invest, Plaintiff Levin took out a home equity line of credit.

38.     On or about May 10, 2017, Defendants Freeze and Carney, representing and on behalf of Defendant AEH, executed a Promissory Note drafted, reviewed, and/or approved, upon information and belief, by Defendants Toprani and/or Hammond, in favor of Plaintiff Levin ("Plaintiff's AEH Note") in the principal amount of $50,000. Plaintiff's AEH Note provides as follows:

a. The term of the AEH Note is thirty (30) days with a maturity date of June 10, 2017;

b. The "earned fee" due Plaintiff Levin at the end of the thirty (30) day period is 10% of the principal loan value, equal to $5,000, plus the principal amount of $50,000, for a total amount of $55,000;

c. Plaintiff Levin will be issued 1,000 membership units of Defendant AEH representing a 1% equity position;

d. In the event of default, the "outstanding principal balance and maximum earned hereunder" shall bear interest at 13.5% per year, calculated from the date of such default until fully paid;

e. Defendants Carney and Freeze are identified as "Business contacts" of AEH; and

f. The proceeds received from the lender shall be used "for the specific purpose of personal expense and soft and pre-development costs, and continuing efforts in project development" of Defendant AEH.

A true and correct copy of Plaintiff's AEH Note is attached hereto as Exhibit 1.

39. Plaintiff Levin understood, based upon Defendants Carney, Irey, and Freeze's representations, that all investment funds would be used to further project development of Defendant AEH pursuant to the J.V. Agreement.

40. Plaintiff's AEH Note provides for a return of the $50,000 principal plus $5,000, representing a 10% return **in thirty days**. There is no indication in the AEH Note or other

9

documents provided to Plaintiff Levin regarding how Defendant AEH would generate profits to repay the AEH Note in such a short time period, particularly when Defendant AEH's own documents state that the first plant would not be fully operational until fiscal 2019.

41.     Plaintiff Levin made the investment by check dated May 10, 2017 made payable to Defendant AEH.

42.     Upon information and belief, at least 23 individuals invested in AEH Notes, at least 11 of whom invested prior to Plaintiff Levin's investment.

43.     Plaintiff's AEH Note is a "security," as that term is defined under 15 U.S.C.A. §78(c)(A)(10),  and Section 102(t) of the Pennsylvania Securities Act of 1972 ("1972 Act"), 70 P.S. §1-102(t).

44.     In connection with the offer and sale of Plaintiff's AEH Note, Defendants Carney, Irey, and Freeze made untrue statements of material fact to Plaintiff Levin, specifically that  the investment was "a sure thing" and was backed by "big money" coming in from notable investors, when in fact, upon information and belief, Defendant AEH never completed any projects and was "funded" entirely by investors such as Plaintiff Levin.

45.     Plaintiff's AEH Note, drafted, reviewed and/or approved, upon information and belief by Defendants Toprani and/or Hammond, and offered and sold to Plaintiff Levin by Defendants Carney, Irey, and Freeze, contained material misrepresentations, including:

> a.     That Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and there was no reasonable basis to believe such a repayment would occur; and

b.      that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and there was no reasonable basis to believe the funds would be used as such.

46.     In connection with the offer and sale of Plaintiff's AEH Note, Defendants AEH, Carney, Irey, and Freeze failed to disclose material facts to Plaintiff Levin, including but not limited to:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That the AEH Note was a "security" which was neither registered nor exempt from registration with the U.S. Securities and Exchange Commission ("SEC") and the Pennsylvania Department of Banking and Securities ("DOBS");

d.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH noteholders by engaging in a fraudulent "prime bank trading platform;"

e       That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under Plaintiff's AEH Note;

f.      That, upon information and belief, none of the AEH noteholders had received payments under their respective AEH Notes;

g.      That there were AEH Notes which were already in default; and

h.      That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

47.      Defendants Carney, Freeze, Toprani and Hammond failed to exercise reasonable care or competence in providing accurate information to Plaintiff Levin.

48.      Plaintiff Levin justifiably relied on the information provided by Defendants Carney, Freeze, Toprani and Hammond in making his investment decision. An investor should not be reasonably expected to determine the truth concerning Defendant AEH at the time of the investment.

49.      Plaintiff Levin's loss is the proximate and direct result of the Defendants' unlawful acts.

50.      Plaintiff Levin received an AEH Certificate which indicated ownership of 1,000 membership units in AEH. Upon information and belief, only some of the AEH noteholders received AEH membership units, raising questions concerning valuation of the units and equal treatment of noteholders. At no time did Plaintiff Levin receive any information which would adequately value AEH membership units, and upon information and belief, the AEH membership units are virtually worthless.

51.      Plaintiff Levin did not receive the payments promised in the AEH Note at the end of the thirty (30) day period, nor has he received any payments to date relating to his investment in the AEH Note, despite repeated requests to Defendants Carney, Irey, and Freeze.

52      Effective September 23, 2013, the so-called "Bad Actor" provisions of Regulation D were promulgated under the 1933 Act. These Bad Actor provisions established certain "disqualifying events" that render an offering of securities ineligible to be conducted pursuant to

Rule 506 of Regulation D. Disqualifying events include where an issuer, an affiliated issuer, or any managing member of an issuer is barred from association with a member of a registered national securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade.

53.     Defendant Carney's criminal conviction is a "disqualifying event" under the Bad Actor provisions, thereby rendering any offering of securities by or on behalf of Defendant AEH ineligible under Rule 506 of Regulation D.

**False Hopes and Intimidation Tactics**

54.     By at least February 2017, three (3) months before Plaintiff Levin's AEH investment, AEH investors were complaining to Defendants Carney, Irey, and Freeze that they were not receiving payments under their respective AEH Notes and Membership Agreements. In response, Defendant Carney provided periodic "updates" to AEH investors in order to allay investor concerns.

55.     Defendants Hammond and Toprani were recipients of many of Defendant Carney's email "updates" to investors.

56.     Defendant Carney stated in "updates" that repayment on the AEH Notes, as well as the project funding for the J.V. Agreement, would be funded by a variety of sources, including "private placement trade platforms" conducted by Resolute Technology Trust LLC ("RTT").

57.     Documents provided by Defendants Carney, Irey, and Freeze to AEH investors describe the RTT "platforms" as buying and selling "prime bank notes" in Europe and Asia with "zero risk to the investors."

58.     Several law enforcement and regulatory agencies have issued warnings to the public about "prime bank" scams, including the Federal Bureau of Investigation and the SEC. In the SEC's February 5, 2015 "Investor Alert: Prime Bank Investments are Scams," the SEC states: "All 'prime bank' investment programs are fraudulent."

59.     Defendant Carney continued to provide these "updates" to AEH Noteholders including Plaintiff Levin through at least Spring 2019, each "update" stating that either the funds for the repayment to noteholders would be obtained soon, or the funds were already deposited into a separate account and would be distributed to noteholders shortly. Many of these "updates" identified Defendants Hammond and Toprani as the AEH attorneys who would be facilitating the repayments, thus adding legitimacy to the proposed repayment.

60.     Defendant Carney sent another "update" on October 13, 2019 to AEH Noteholders, which referenced the Florida Department of Corporations' administrative dissolution" of Defendant AEH and stated "AEH, LLC are continuing their efforts regarding the settlement of all debt and business affairs . . . ."

61.     Many of the "updates" required AEH investors to complete a "Debt Repayment Worksheet" for the stated purpose of facilitating the repayment; however, the information requested in the worksheet should have already been known to Defendant AEH as the issuer of the securities.

62.     Defendant Hammond met with at least some AEH investors in the Canonsburg, PA office of Defendants DMC and DMC Bradley to convince noteholders that the AEH program was legitimate and that the noteholders would be receiving payment in the near future. Defendant Hammond knew or should have known that his statements concerning the legitimacy of Defendant AEH would be shared with other AEH Noteholders. Defendants Toprani and Hammond were

"cc'd" on many of Defendant Carney's "updates" even after it is believed they ended their legal representation.

63.     Defendant Toprani was aware of at least one meeting between Defendant Hammond and an AEH investor in May 2017, which meeting took place at the office of Defendants DMC and DMC Bradley at 1900 Main Street, Suite 207, Canonsburg, PA 15317.

64.     Defendant Irey and   another partner of Defendant DMC also attended and participated in the meeting between Defendant Hammond and an AEH investor in May 2017 at the office of Defendant DMC.

65.     The meeting with the AEH investor in May 2017 was held because the investor was inquiring about the status of his investment and  was threatening legal action if his investment was not returned.

66.     During the May 2017 meeting at Defendant DMC's office, Defendants Hammond and Irey represented to an AEH investor, among other things, that the AEH program was legitimate and that investors would be receiving payment in the near future.

67.     Defendants Toprani and Hammond knew or should have known that the statements concerning the legitimacy of Defendant AEH would be shared with other investors and that the representations of Defendants Irey and Hammond would discourage investors from commencing litigation.

68.     Simultaneous with providing the false "updates" to AEH noteholders, Defendants AEH and Carney, with the assistance of Defendants Hammond and Toprani, employed intimidation tactics in an effort to deter AEH investors from seeking information concerning the legitimacy of

the AEH program and discussing the AEH investment with one another, including but not limited to:

      a.      Requiring AEH noteholders to sign a Mutual Non-Circumvention, Non-Disclosure Confidentiality Agreement ("Non-Disclosure Agreement"), which *inter alia* prohibits contact with third parties regarding the AEH program;

      b.      Expressly forbidding AEH investors from contacting D4, RTT, or anyone at Defendant AEH except for Defendant Carney;

      c.      Stating in various "updates" that any sharing of negative "unsubstantiated rumors" concerning the AEH program would be a violation of the "Non-Disclosure Agreement" and would subject the violator to legal action;

      d.      Stating in at least one "update" that taking an adversarial position to Defendant AEH would be "tortious conduct" and would subject the violator to legal action; and

      e.      Specifically identifying one AEH investor by name who "has made statements that are libelous and damaging" to the reputation of AEH and others.

69.      On more than one occasion, Defendant Hammond used DMC Bradley letterhead to threaten AEH investors with legal action when the investors attempted to obtain information concerning the AEH projects from AEH and a representative of D4, as follows:

      a.      On or before April 12, 2017, Defendant Hammond received a request from an attorney on behalf of two AEH investors for AEH to provide a copy of certain records of AEH and information pertaining to the investors' respective Promissory

Notes which were in default.  Counsel's request also put Defendants on notice that legal action might be taken based on said default if the requested documents and information were not provided;

b.      On or about April 12, 2017, Defendant Hammond used DMC Bradley letterhead to respond to the AEH investors' attorney whereby Defendant Hammond refused to provide the requested documents or information and further represented, *inter alia*, as follows:

   (i)      That AEH would "vigorously defend" any action commenced by the investors;

   (ii)      That AEH would file a counterclaim against the investors if legal action was taken by the investors;

   (iii)      That the investors' conduct was "baseless and tortious conduct"; and

   (iv)      That counsel's request on behalf of the investors was "extortive".

c.      One of the above-referenced AEH investors subsequently retained other counsel, who then contacted Defendant Carney.

d.      In response to the investor's new attorney, Defendant Hammond used DMC Bradley letterhead for a written communication dated June 14, 2017 whereby Defendant Hammond stated*, inter alia*, that:

   (i)      the investor had undertaken a course of conduct in violation of his "contractual and fiduciary obligations to AEH" and which "directly and significantly threatens the business interests of AEH and its partners";

(ii)    the investor violated his Non-Disclosure Agreement by contacting and attempting to engage in a conversation with a representative of D4;

(iii)   AEH anticipated "significant future business" from D4;

(iv)    the investor's actions were "egregious" and "intolerable";

(v)     the investor had made "false, incendiary and detrimental statements concerning the legitimate business efforts of AEH" and his behavior was "misguided and reckless";

(vi)    AEH had been damaged by the investor's actions and "once such damage can be assessed, AEH will be considering any and all legal remedies" against the investor for his conduct; and

(vii)   the investor was to immediately and permanently cease and desist from engaging in any communication, written or verbal, or contacting any individual, party, or entity with which AEH has past, current or prospective business.

e.    Subsequently, Defendant Hammond was provided with a draft Complaint by the investor's attorney.

f.    In response to the draft Complaint, Defendant Hammond used DMC Bradley letterhead for another written communication to the investor's attorney dated September 12, 2017 whereby Defendant Hammond represented that he had spoken with "his clients" who indicated that they had productive discussions with the investor aimed at resolving the issues.

g.    In Defendant Hammond's letter of September 12, 2017, he represented that he was authorized to share certain terms of settlement between his "clients" and the investor, which terms included, *inter alia*, the following key items:

(i)    All legal actions by the investor against AEH would be immediately withdrawn by the investor;

(ii)    a new Non-Circumvention and Non-Disclosure Agreement would be executed by the investor, Kevin Carney, and D4 that would supersede all similar previous agreements; and

(iii)    a new Promissory Note would be issued to the investor to replace the old ones which were in default.

h.    In an effort to keep litigation at bay and protect Defendants Carney, AEH, Irey, and Freeze, Defendant Hammond's letter of September 12, 2017 summarized the key provisions to be included in the new Promissory Note and requested that the investor's attorney discuss the proposal with his client before moving forward with any judicial action.

70.    Defendants' actions set forth in paragraphs 54 through 69 above created a chilling effect on AEH investors' efforts to obtain information about their investments.

71.    Defendants' actions set forth in paragraphs 54 through 69 above also created and reinforced an air of legitimacy to the AEH investment.

72.     Defendants' actions set forth in paragraphs 54 through 69 above perpetuated the fraud on AEH investors that AEH was a credible venture that would be doing significant future business with D4.

73.     In a subsequent "update" to AEH noteholders approximately six (6) months later dated March 9, 2018, Defendant Carney admitted that "no profits have been made by AEH from its inception and has been operating strictly upon debt incurred via loans made to AEH."

74.     It is believed and therefore averred Defendants Hammond and Toprani were recipients  of the above-described "update" from Defendant Carney.

75.     Defendants Hammond and Toprani never took any steps whatsoever to correct their previous representations that Defendant AEH was a legitimate entity with significant business on the horizon with D4.

76.     For a period of time, Defendants Hammond and Toprani were visible "cc" recipients on several emails to investors from Defendant Carney, until Defendant Carney later took steps to hide the names and email addresses of the recipients from each other.

77.     Defendant Carney continued to provide several periodic "updates" to investors for another year through April 24, 2019.

78.     It is believed and therefore averred that Defendants Hammond and Toprani continued to be recipients on each of these "updates" through at least April 24, 2019.

79.     Defendants Hammond and Toprani never responded to or weighed in on any of the "updates" to state that they were no longer counsel for Defendants Carney, Irey, AEH, and Freeze.

80.     Defendants Hammond and Toprani never clarified for the recipients of these "updates" their continued involvement or lack thereof with Defendant AEH or the reason Defendants Hammond and Toprani were still included as recipients of the "updates" if they were no longer involved as counsel for Defendants Carney, AEH, Irey, and Freeze.

81.     Defendants Hammond and Toprani sat in silence and watched Defendant Carney distribute a year's worth of false and misleading "updates" to investors which updates were merely an effort by Defendant Carney to lull investors into believing there was a chance they would someday receive their money back, all for the purpose of delaying the investors from uncovering the fraud and discouraging the commencement of litigation for as long as possible.

82.     Defendant AEH would not have been able to continue raising money from investors such as Plaintiff Levin herein without the assistance of Defendants Hammond and Toprani.

83.     Defendant AEH would not have been able to avoid or delay litigation by investors, and thus exposure of the fraud, without the assistance of Defendants Hammond and Toprani.

84.     Defendant AEH would not have been able to leverage the Non-Disclosure agreements and assert the vigorous, audacious threats of legal action against its investors, thereby preventing or delaying the exposure of the fraud, without the assistance of Defendants Hammond and Toprani.

85.     Defendants Hammond and Toprani lent their influence, professional expertise, legal resources and reputations, and even their office space for the purpose of facilitating the fundraising efforts of Defendant AEH and to meet with and assuage the fears investors who were growing suspicious of Defendant AEH's activities and the true status of their investments.

86.     Defendants Hammond and Toprani often emphasized the Non-Disclosure Agreements both to reinforce the exclusivity of Defendant AEH's purported strategic partnerships and the joint venture with D4 and to justify Defendant AEH's inability to provide information when requested.

87.     Defendants Hammond and Toprani also went along with Defendant Carney's repeated emphasis on the necessity of strict confidentiality pertaining to Defendant AEH's operations, which had the effect of impressing upon investors and potential investors that Defendant AEH represented a uniquely lucrative and exclusive investment opportunity.

88.     Defendants Hammond and Toprani contributed to the "success" of Defendant AEH, and therefore to the losses of its investors.

**Attorney Defendants' Lack of Due Diligence**

89.     In the decision to commence representation of Irey and Defendants AEH, Carney, and Freeze, and to continue that representation until at least June 2018, Defendants DMC, DMC Bradley, Hammond and Toprani failed to exercise due care in recognizing and/or negligently or recklessly ignoring numerous red flags, including but not limited to:

    a.     Defendant Carney's criminal conviction;

    b.     Defendant Freeze's FINRA Suspension;

    c.     Defendant Freeze's FINRA Bar;

    d.     That the Membership Agreements and AEH Notes were "securities" which were neither registered nor exempt from registration with the SEC, the DOBS, and other state securities agencies in which sales occurred;

e.      That the AEH Notes promised repayment of principal and interest to noteholders within time periods ranging from thirty (30) days to three (3) months, when in fact offering documents provided to noteholders indicated that the first AEH processing plant would not be in operation until fiscal 2018 or 2019;

f.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH noteholders by engaging in a fraudulent "prime bank trading platform;"

g.      That there were AEH Notes which were already in default;

h.      That there were numerous investors raising serious inquiries about the status of their investments and the operations of Defendant AEH;

i.      That there were investors represented by counsel threatening legal action against AEH for defaulting on their AEH Notes; and

j.      That Defendants Carney, Irey, and Freeze continued to solicit investors in Defendant AEH when none of the current AEH noteholders had received payments under their respective AEH Notes.

90.      Despite these "red flags," Defendants DMC, DMC Bradley, Hammond and Toprani agreed to represent Defendants AEH, Carney, Irey, and Freeze, and continued that representation until at least October 2017. During that time, the actions of Defendants DMC, DMC Bradley, Hammond, and Toprani, resulted in the continuation of the fraud perpetrated on AEH investors, including Plaintiff Levin.

91.     Despite these "red flags," Defendant Toprani, on behalf of Defendants DMC and DMC Bradley, upon information and belief, drafted the Memorandum of Understanding initially used to solicit investors and met with potential AEH investors to solicit their investments and, upon information and belief, drafted the AEH Notes and Membership Agreements.

92.     Defendant Toprani knew or should have known that potential investors in AEH such as Plaintiff Levin would be guided by the Memorandum of Understanding, AEH Notes, and Membership Agreements in their respective investment decisions.

93.     Despite all the hallmarks of investment fraud described herein, Defendants DMC, DMC Bradley, Hammond and Toprani agreed to represent Defendants AEH, Carney, Irey, and Freeze, and continued that representation until at least October 2017. During that time, the hallmark signs of fraud were growing and would have been identified and investigated by a reasonable attorney in the same or similar circumstances.

94.     Defendants Hammond and Toprani knew or should have known that what Defendant AEH was doing was unlawful.

95.     Defendants Toprani and Hammond knew or should have known that their conduct in representing Defendants Carney, AEH, Irey, and Freeze could cause injury to investors such as Plaintiff Levin herein.

96.     Defendants Toprani and Hammond knew or should have known that being identified as recipients on Defendant Carney's "updates" to investors gave the appearance that Defendants DMC, DMC Bradley, Hammond and Toprani were:

    a.      still legal counsel for Defendant AEH;

b.      utilizing their extensive experience with energy, corporate, business and commercial law to be the "boots on the ground" for Defendant AEH's legal needs;

c.      ensuring that Defendant AEH was complying with all applicable state and federal law including all relevant statutes, rules and regulations; and

d.      putting their stamp of approval on the representations made by Defendant Carney in the investor "updates".

97.     Had Defendants DMC, DMC Bradley, Hammond or Toprani conducted an even cursory evaluation of the background of Defendant Carney or Defendant Freeze, or a cursory inspection of the operations of Defendant AEH, they would have readily identified several hallmarks of securities fraud and would have been forced to face the reality that Defendant AEH was nothing more than a fraud being perpetrated by a convicted criminal and a permanently barred stockbroker.  A simple search online would have confirmed the truth, especially in light of Defendant Hammond and Toprani's background and experience.

98.     Instead, Defendants Hammond and Toprani facilitated Defendant AEH's growth and fiercely protected Defendant AEH when investors grew suspicious and started asking questions.

99.     Even questions from investors and threats of litigation from counsel for certain investors whose AEH Notes were in default were not enough to cause Defendants Hammond and Toprani to conduct further due diligence into their clients or to deter them from representing Defendants Carney, AEH, Irey, and Freeze.  To the contrary, Defendants Hammond and Toprani doubled down on their efforts to contribute to the success of Defendant AEH and attempted to silence these investors with overtly aggressive threats of litigation.

100.    Defendants Hammond and Toprani were essential to the growth and continued operations of Defendant AEH.  But for Defendant Hammond and Toprani's assistance, Defendant AEH would not have survived the threatened litigation from investors which litigation was kept at bay by Defendants Hammond and Toprani, and Defendant AEH would have failed and/or been exposed in court as a fraud before ensnaring new unwitting investors, including Plaintiff Levin herein.

101.    Upon information and belief, Plaintiff Levin has been the victim of a fraud, perpetrated by the intentional and/or reckless conduct of Defendants AEH, Carney, Irey, and Freeze, and by the negligent and/or reckless conduct of Defendants DMC, DMC Bradley, Hammond and Toprani.

102.    The fact that Defendants AEH, Carney, Irey, and Freeze were represented by Defendants DMC, DMC Bradley, Hammond, and Toprani added an element of legitimacy to the AEH investment. The fact that Defendants DMC, DMC Bradley, Hammond and Toprani participated in the false hopes and intimidation tactics set forth above created a chilling effect on any efforts of Plaintiff Levin and other AEH noteholders to investigate the legitimacy of the AEH program.

103.    Defendants DMC, DMC Bradley, Hammond, and Toprani knew or should have known that their efforts on behalf of Defendants AEH, Carney, Irey, and Freeze set forth above would have the effect of legitimizing the AEH program, allaying investor concerns, and deterring investors' efforts to obtain accurate information concerning the AEH investment.

104.    Had AEH investors, prior to Plaintiff Levin's investment, been privy to accurate information concerning the AEH program, they would likely have uncovered the fraud and Plaintiff

Levin and other subsequent investors would not have made their respective investments in the first place.

105.    Each of the "red flags" set forth in paragraph 89 above constitute material facts which Defendants DMC, DMC Bradley, Hammond, and Toprani were required to disclose to Plaintiff Levin but failed or refused to do so.

106.    In view of the numerous "red flags" set forth in paragraph 89 above, a reasonable attorney in the same or similar circumstances would have discovered the fraud perpetrated on Plaintiff Levin and other AEH investors by Defendants AEH, Carney, Irey, and Freeze.

## CAUSES OF ACTION

### COUNT 1

### SECURITIES FRAUD
### SECTIONS 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934
### (15 U.S.C. §78j(b) and SEC Rule 10b-5)

### (Defendants AEH, Carney, Irey, and Freeze)

107.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 106 by reference, as if fully set forth below.

108.    In violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Defendants AEH, Carney, Irey, and Freeze, in connection with the offer and sale of Plaintiff's AEH Note, by use of the means and instrumentalities of interstate commerce and of the mails, employed one or more device, scheme or artifice to defraud the Plaintiff; by making untrue statements of material fact and  omitting to state one or more material facts to the Plaintiff necessary

in order to make the statements made, in the light of the circumstances in which they were made, not false and misleading, and engaged in other acts, practices or courses of business which operated to defraud and deceive the Plaintiff, all to his financial harm.

109.   In offering and selling the AEH Note to Plaintiff Levin, Defendants Carney, Irey, and Freeze made an untrue statement of material fact, namely that Defendant AEH was a "sure thing" and backed by "big money" from notable investors, when in fact, upon information and belief, Defendant AEH never completed any projects and was "funded" entirely by other investors such as Plaintiff Levin.

110.   In connection with the offer and sale of the AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze made material misrepresentations, including:

a.   That the AEH Note provided that Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants knew or should have known that such a repayment would not occur;

b.   that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and there was no reasonable basis to believe the funds would be used as such; and

c.   That the Report provided to Plaintiff Levin provided that; (1) $137 million had already been secured for the project; (2) that Defendant is seeking an additional investments of at least $130 million for the project facilities; and (3) that the first plant will be fully operational in fiscal 2019 with annual revenues of $41.8 million;

when in fact, upon information and belief, none of the above was true with the exception of seeking additional investments.

111.    In offering and selling the AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That the AEH Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;

d       That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank-trading platform;"

e.      That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

f.      That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective notes;

g.      That there were AEH Notes which were already in default; and

h.      That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

112.    Defendants' misrepresentations and omissions were intended to deceive, and did in fact deceive, the Plaintiff, for the purpose of causing the Plaintiff to invest in the AEH Note.

113.    Had Defendants AEH, Carney, Irey, and Freeze not made the statements set forth in paragraphs 109 through 110, or made the statements set forth in paragraph 111 above, Plaintiff Levin would not have agreed to invest in the AEH Note.

114.    Defendants AEH, Carney, Irey, and Freeze's misrepresentations and omissions to state material facts in connection with the AEH Note caused Plaintiff Levin to suffer damages of at least the principal amount of the AEH Note plus interest.

115.    Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Levin for the consideration paid by the Plaintiff for the AEH Note, with earned fees and interest thereon.

## COUNT II

## OFFER AND SALE OF AN UNREGISTERED SECURITY IN VIOLATION OF SECTION 5 OF THE SECURITIES ACT OF 1933

## (15 U.S.C. §77e)

## (Defendants AEH, Carney, Irey, and Freeze)

116.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 115 by reference, as if fully set forth below.

117.    Defendants AEH, Carney, Irey, and Freeze, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such

securities to be carried through the mails of in interstate commerce for the purpose of sale or for delivery after sale.

118.    No registration statement and no exemption filings have been filed with the SEC with respect to Plaintiff's AEH Note, and no exemption from registration was otherwise available.

119.    As a result, Defendants AEH, Carney, Irey, and Freeze offered and sold unregistered securities to Plaintiff Levin without an exemption from registration in violation of Section 5 of the 1933 Act, 15 U.S.C.A. §77e.

120.    Pursuant to Section 12(a)(1) of the 1933 Act, 15 U.S.C.A. §77l(a)(1), Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Levin for the consideration paid by the Plaintiff for the AEH Note, with earned fees and interest thereon.

**COUNT III**

**SECURITIES FRAUD**

**(Section 501 of the 1972 Act, 70 P.S. §1-501)**

**(Defendants AEH, Carney, Irey, and Freeze)**

121.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 120 by reference, as if fully set forth below.

122.    In offering and selling the AEH Note to Plaintiff Levin, Defendants Carney, Irey, and Freeze made untrue statements of material fact, namely that Defendant AEH was a "sure thing" and backed by "big money" from notable investors, when in fact, upon information and belief, Defendant AEH never completed any projects and was "funded" entirely by other investors such as Plaintiff Levin.

123.    In connection with the offer and sale of the  AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze made material misrepresentations, including:

a.      That the AEH Note provided that Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants knew or should have known that such a repayment would not occur;

b.      that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and there was no reasonable basis to believe the funds would be used as such; and

c.      That the Report provided to Plaintiff Levin provided that; (1) $137 million had already been secured for the project; (2) that Defendant is seeking an additional investments of at least $130 million for the project facilities; and (3) that the first plant will be fully operational in fiscal 2019 with annual revenues of $41.8 million; when in fact, upon information and belief, none of the above was true with the exception of seeking additional investments.

124.    In connection with the offer and sale of the AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

a.       Defendant Carney's criminal conviction;

b.       Defendant Freeze's FINRA suspension;

c.      That the AEH Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;

d.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

e.      That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

f       That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes;

g.      That there were AEH Notes which were already in default; and

h.      That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

125.    Had Defendants AEH, Carney, Irey, and Freeze not made the statements set forth in paragraphs 122 through 123 above, and made the statements set forth in paragraph 124 above, Plaintiff Levin would not have agreed to invest in the AEH Note.

126.    Defendants AEH, Carney, Irey, and Freeze's misrepresentations and omissions to state material facts in connection with the AEH Note caused Plaintiff Levin to suffer damages of at least the principal amount of the AEH Note plus interest.

127.    Defendants AEH, Carney, and Freeze are liable jointly and severally to Plaintiff Levin pursuant to Section 501 of the 1972 Act, 70 P.S. §1-501, for the consideration paid by the Plaintiff for the AEH Note, with earned fees and interest thereon.

## COUNT IV

### OFFER AND SALE OF AN UNREGISTERED SECURITY
### IN VIOLATION OF SECTION 201 OF THE 1972 ACT

### (Sections 201 and 502 of the 1972 Act, 70 P.S. §§1-201, 502)

### (Defendants AEH, Carney, Irey, and Freeze)

128.    Plaintiff  Levin hereby incorporates the allegations of paragraphs 1 through 127 by reference, as if fully set forth below.

129.    Defendants AEH, Carney, Irey, and Freeze offered and sold the AEH Note to Plaintiff Levin in the Commonwealth of Pennsylvania.

130.    Plaintiff's AEH Note is a "security" under Section 102(t) of the 1972 Act, 70 P.S. §1-102(t).

131.    No registration statement has been filed with the DOBS with respect to Plaintiff's AEH Note.

132.    No exemption filings have been made with the DOBS with respect to Plaintiff's AEH Note, and no exemption from registration was otherwise available.

133.    As a result, Defendants AEH, Carney, Irey, and Freeze offered and sold an unregistered, non-exempt security to Plaintiff Levin in violation of Section 201 of the 1972 Act, 70 P.S. §1-201;

134.   Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Levin pursuant to Section 502 of the 1972 Act, 70 P.S. §1-502, for the consideration paid by Plaintiff for the AEH Note, with earned fees and interest thereon.

**COUNT V**

**BREACH OF CONTRACT/DEFAULT ON THE AEH NOTE**

**(Defendants AEH, Carney, Irey, and Freeze)**

135.   Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 134 by reference, as if fully set forth below.

136.   Defendants AEH, Carney, Irey, and Freeze have failed to make any payments under Plaintiff's AEH Note.

137.   Defendants AEH, Carney, Irey, and Freeze owe Plaintiff Levin at least $55,000 in principal and "earned fees," plus interest based on default of 13.5 % per year.

138.   Due to such breach and default, Plaintiff Levin has suffered damage of at least $55,000.

**COUNT VI**

**NEGLIGENT MISREPRESENTATION**

**(Defendants AEH, Carney, Irey, and Freeze)**

139.   Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 138 by reference, as if fully set forth below.

140.   In offering and selling the AEH Note to Plaintiff Levin, Defendants Carney, Irey, and Freeze made untrue statements of material fact, namely that Defendant AEH was a "sure thing"

and backed by "big money" from notable investors, when in fact, upon information and belief, Defendant AEH never completed any projects and was "funded" entirely by other investors such as Plaintiff Levin.

141.    In connection with the offer and sale of the  AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze made material misrepresentations, including:

a.    That the AEH Note provided that Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants knew or should have known that such a repayment would not occur;

b.    that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and there was no reasonable basis to believe the funds would be used as such; and

c.    That the Report provided to Plaintiff Levin provided that; (1) $137 million had already been secured for the project; (2) that Defendant is seeking an additional investments of at least $130 million for the project facilities; and (3) that the first plant will be fully operational in fiscal 2019 with annual revenues of $41.8 million; when in fact, upon information and belief, none of the above was true with the exception of seeking additional investments.

142.    In connection with the offer and sale of the AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze omitted to state material facts necessary in order to make statements

made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

     a.    Defendant Carney's criminal conviction;

     b.    Defendant Freeze's FINRA Suspension;

     c.    That the AEH Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;

     d.    That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

     e.    That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

     f.    That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes;

     g.    That there were AEH Notes which were already in default; and

     h.    That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

143.    Plaintiff Levin detrimentally and justifiably relied upon the information provided by Defendants AEH, Carney, Irey, and Freeze. Had Defendants AEH, Carney, Irey, and Freeze not made the statements set forth in paragraphs 140 through 141 above, and made the statements set forth in paragraph 142 above, Plaintiff Levin would not have agreed to invest in the AEH Note.

144.    Defendants AEH, Carney, Irey, and Freeze's misrepresentations and omissions in connection with the AEH Note caused Plaintiff Levin to suffer damages of at least the principal amount of the AEH Note plus earned fees and interest.

145.    Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Levin for the consideration paid by the Plaintiff for the AEH Note, with earned fees and interest thereon.

## COUNT VII

## FRAUDULENT MISREPRESENTATION
### ( All Defendants)

146.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 145 by reference, as if fully set forth below.

147.    In offering and selling the AEH Note to Plaintiff Levin, Defendants Carney, Irey, and Freeze made untrue statements of material fact, namely that Defendant AEH was a "sure thing" and backed by "big money" from notable investors, when in fact, upon information and belief, Defendant AEH never completed any projects and was "funded" entirely by other investors such as Plaintiff Levin.

148.    In connection with the offer and sale of the AEH Note to Plaintiff Levin, Defendants AEH, Carney, Irey, and Freeze made the following material misrepresentations in the Report provided to Plaintiff Levin: (1) That $137 million had already been secured for the project; (2) that Defendant is seeking an additional investments of at least $130 million for the project facilities; and (3) that the first plant will be fully operational in fiscal 2019 with annual revenues of $41.8 million;

38

when in fact, upon information and belief, none of the above was true with the exception of seeking additional investments.

149.    The AEH Note and offered and sold to Plaintiff Levin, drafted, reviewed and/or approved, upon information and belief by Defendants Toprani and/or Hammond, contained material misrepresentations, including:

a.    That Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants Toprani and/or Hammond knew or should have known that such a repayment would not occur; and

b.    that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and there was no reasonable basis for Defendants Toprani and/or Hammond to believe the funds would be used as such.

150.    Plaintiff's AEH Note failed to disclose the following material information:

a.    Defendant Carney's criminal conviction;

b.    Defendant Freeze's FINRA Suspension;

c.    That they were "securities" which were neither registered nor exempt from registration as required by the SEC and the DOBS;

d.    That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

e.     That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

f.     That none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes;

g.     That there were AEH Notes which were already in default; and

h.     That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

151.   Plaintiff Levin detrimentally and justifiably relied upon the information provided by Defendants, but as an unsophisticated investor did not understand or have the requisite knowledge to know that there were material omissions.  Had Defendants  not made the statements set forth in paragraphs 147 through 149 above, and made the statements set forth in paragraph 150 above, Plaintiff Levin would not have agreed to invest in the AEH Note.

152.   Defendants' misrepresentation  omissions to state material facts in connection with the AEH Note caused Plaintiff Levin to suffer damages of at least the principal amount of the AEH Note plus earned fees and interest.

153.   Defendants  are liable jointly and severally to Plaintiff Levin for the consideration paid by the Plaintiff for the  AEH Note, with earned fees and interest thereon.

## COUNT VIII

## FRAUDULENT CONCEALMENT

### (All Defendants)

154.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 153 by reference, as if fully set forth below.

155.    In participating in the "False Hopes and Intimidation Tactics" set forth in paragraphs 54 through 88, Defendants intentionally concealed material information concerning the illegitimacy of Defendant AEH.

156.    Defendants' deceptive conduct was intended to hide information, mislead, avoid suspicion, and/or prevent further inquiry into Defendant AEH's purported projects.

157.    Defendants knew or reasonably expected that Plaintiff Levin and other AEH Noteholders would rely on the information and would refrain from seeking information concerning Defendant AEH's purported projects.

158.    As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiff Levin suffered injury.

## COUNT IX

## NEGLIGENT MISREPRESENTATION

## (Defendants DMC, DMC Bradley, Hammond, and
## Toprani)

159.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 158 by reference, as if fully set forth below.

160.    One who, in the course of his business, profession or employment, supplies false, incomplete and inaccurate information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if the person fails to exercise reasonable care or competence in obtaining or communicating the information.

161.    As a law firm that offers a wide range of legal and advocacy services for both public and private clients, Defendants DMC and DMC Bradley, through their attorneys Defendants Toprani and Hammond, are in the business of supplying information for the guidance of others.

162.    Upon information and belief, Defendants DMC, DMC Bradley, and Toprani represented Defendants AEH in the offering of promissory notes to investors and  drafted the Memorandum of Understanding and, upon information and belief, Defendants Toprani and/or Hammond drafted the Membership Agreements and AEH Notes.

163.    The AEH Note and offered and sold to Plaintiff Levin, drafted, reviewed and/or approved, upon information and belief by Defendants Toprani and/or Hammond, contained material misrepresentations, including:

a.      That Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants Toprani and/or Hammond knew or should have known that such a repayment would not occur; and

b.      that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and there was no reasonable basis for Defendants Toprani and/or Hammond to believe the funds would be used as such.

164.    Plaintiff's AEH Note failed to disclose the following material information:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That they were "securities" which were neither registered nor exempt from registration as required by the SEC and the DOBS;

d.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

e.      That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

f.      That none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes;

g.      That there were AEH Notes which were already in default; and

h.      That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

165.    Defendants DMC, DMC Bradley, Toprani, and Hammond knew or should have known of the falsity of the statements set forth in paragraph 163 above, knew or should have known of the information set forth in paragraph 164 above, and failed to exercise reasonable care in communicating the information to Plaintiff Levin.

166.    Defendants DMC, DMC Bradley, Toprani and Hammond knew that Defendants AEH, Carney, and Freeze intended to use the AEH Notes to solicit investments in Defendant AEH.

167.    Defendants Hammond and Toprani supplied false information to AEH Noteholders set forth in paragraphs 62 through 67 above and  knew or should have known that such false information would be shared with other AEH Noteholders such as Plaintiff Levin.

168.    Defendants DMC, DMC Bradley, Hammond, and Toprani participated in the "False Hopes and Intimidation Tactics" set forth in paragraphs 54 through 88 above, which acted to deter AEH investors from investigating the legitimacy of the AEH investment and uncovering the fraud.

169.    Had the fraud been uncovered, Plaintiff Levin would not have invested in Defendant AEH.

170.    Defendants DMC, DMC Bradley, Hammond, and Toprani are therefore liable jointly and severally for the damages caused to Plaintiff Levin.

## COUNT X

### SECURITIES FRAUD
### SECTIONS 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934
### (15 U.S.C. §78j(b) and SEC Rule 10b-5)

### (Defendants DMC, DMC Bradley, Toprani, and Hammond)

171.     Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 170 by reference, as if fully set forth below.

172.     In violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Defendants DMC, DMC Bradley, Toprani, and Hammond, in connection with the offer and sale of the AEH Note, by use of the means and instrumentalities of interstate commerce and of the mails, employed one or more devices, schemes or artifices to defraud the Plaintiff; by making untrue statements of material fact and  omitting to state one or more material facts to the Plaintiff necessary in order to make the statements made, in the light of the circumstances in which they were made, not false and misleading, and engaged in other acts, practices or courses of business which operated to defraud and deceive the Plaintiff, all to his financial harm.

173.     In drafting, reviewing and/or approving the AEH Note offered and sold to Plaintiff Levin, Defendants Toprani and/or Hammond made untrue statements of material fact, namely:

> a.     That Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants Toprani and/or Hammond had no reasonable basis to believe such a repayment would occur; and

> b.     that all investment proceeds would be used for "personal expense and soft and  pre-development  costs,  and  continuing  efforts  in  project  development  of

[AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and Defendants Toprani and/or Hammond had no reasonable basis to believe the funds would be used as such.

174.    The AEH Note drafted, reviewed and/or approved, upon information and belief by Defendants Toprani and/or Hammond  omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That the AEH Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;

d.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank-trading platform;"

e.      That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

f.      That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective notes;

g.      That there were AEH Notes which were already in default; and

h.      That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

175.     Defendants Toprani and Hammond engaged in other acts, practices, and courses of business which operated to defraud and deceive the Plaintiff, set forth in paragraphs 54 through 88 above.

176.     Defendants DMC, DMC Bradley, Toprani, and Hammond knew or should have known of the falsity of the statements set forth in paragraph 173 above, knew or should have known of the information set forth in paragraph 174 above, and failed to exercise reasonable care in communicating the information to Plaintiff Levin.

177.     Had Defendants Toprani and Hammond not made the statements set forth in paragraphs 173 above, made the statements set forth in paragraph 174 above, or not engage in the conduct set forth in paragraphs 54 through 88 above, Plaintiff Levin would not have agreed to invest in the AEH Note.

178.     Defendants Toprani and Hammond's misrepresentations, omissions to state material facts, and other conduct set forth above in connection with the offer and sale of the AEH Note caused Plaintiff Levin to suffer damages of at least the principal amount of the AEH Note plus interest.

179.     Defendants DMC, DMC Bradley, Toprani and Hammond are liable jointly and severally to Plaintiff Levin for the consideration paid by the Plaintiff for the AEH Note, with earned fees and interest thereon.

## COUNT XI

## SECURITIES FRAUD

### (Section 501 of the 1972 Act, 70 P.S. §1-501)

### (Defendants DMC, DMC Bradley, Toprani, and Hammond)

180.     Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 179 by reference, as if fully set forth below.

181.     In drafting, reviewing and/or approving the AEH Note offered and sold to Plaintiff Levin, Defendants Toprani and/or Hammond made untrue statements of material fact, namely:

      a.      That Plaintiff Levin would be repaid $55,000 within thirty (30) days; when in fact no such repayment was made and Defendants Toprani and Hammond had no reasonable basis to believe such a repayment would occur; and

      b.      that all investment proceeds would be used for "personal expense and soft and pre-development costs, and continuing efforts in project development of [AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and Defendants Toprani and Hammond had no reasonable basis to believe the funds would be used as such.

182.     In connection with the offer and sale of the AEH Note to Plaintiff Levin, Defendants Toprani and Hammond omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

      a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That the AEH Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;

d.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

e.      That Defendant AEH could not generate enough income to make payments to Plaintiff Levin under the AEH Note;

f.      That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes;

g.      That there were AEH Notes which were already in default; and

h.      That there were investors represented by legal counsel threatening legal action against AEH for defaulting on their AEH Notes.

183.    Defendants Toprani and Hammond engaged in other acts, practices, and courses of business which operated to defraud and deceive the Plaintiff, set forth in paragraphs 54 through 88 above.

184.    Defendants DMC, DMC Bradley, Toprani, and Hammond knew or should have known of the falsity of the statements set forth in paragraph 181 above, knew or should have known of the information set forth in paragraph 182 above, and failed to exercise reasonable care in communicating the information to Plaintiff Levin.

185.    Had Defendants Toprani and Hammond not made the statements set forth in paragraph 181 above,  made the statements set forth in paragraph 182 above, and not engaged in the conduct set forth in paragraphs 54 through 88 above, Plaintiff  Levin would not have agreed to invest in the AEH Note.

186.    Defendants Toprani and Hammond's misrepresentations, omissions to state material facts, and other conduct set forth above in connection with the AEH Note caused Plaintiff  Levin to suffer damages of at least the principal amount of the AEH Note plus interest.

187.    Defendants Toprani and Hammond are liable jointly and severally to Plaintiff Levin pursuant to Section 501 of the 1972 Act, for the consideration paid by the Plaintiff for the AEH Note, with earned fees and interest thereon.

## COUNT XII

## AIDING AND ABETTING CIVIL FRAUD

### (Defendants DMC, DMC Bradley, Toprani, and Hammond)

188.    Plaintiff Levin hereby incorporates the allegations of paragraphs 1 through 187 by reference, as if fully set forth below.

189.    Defendants DMC, DMC Bradley, Toprani, and Hammond either knew or willfully disregarded the fraud being perpetrated by Defendants AEH, Carney, Irey, and Freeze.

190.    Defendants DMC, DMC Bradley, Toprani, and Hammond actively and substantially assisted this fraud, by among other things: (1) Defendant Toprani's meeting with investors soliciting their investments and subsequently vouching for Defendant AEH's legitimacy; (2)

drafting, reviewing, and/or approving the AEH agreements and notes; and (3) participating in the "False Hopes and Intimidation Tactics" set forth in paragraphs 54 through 88 above.

191.    As a proximate result of Defendants' conduct, Plaintiff Levin suffered damages.

**Prayer For Relief**

WHEREFORE, Plaintiff respectfully prays that he be awarded:

A.    Judgment on the AEH Note in the amounts due and owing thereon, including earned fees and interest;

B.    Actual damages to be proved at trial;

C.    Punitive Damages

D.    All costs and expenses, including without limitation reasonable attorneys' fees and expenses;

E.    Such other and further relief that the Court deems just and proper.

Dated:  January 17, 2020                    /s/   Scott A. Lane

                                        Scott A. Lane
                                        Pa. I.D. 51124
                                        The Law Office of Scott A. Lane, LLC
                                        P.O. Box 368
                                        Ingomar, PA 15127
                                        (412) 780-5240
                                        scott@scottlanelaw.com


                                        /s/   Alice L. Stewart

                                        Alice L. Stewart
                                        Pa. I.D. 77649
                                        P.O. Box 7226

Pittsburgh, PA 15213
(412) 624-7857
als234@pitt.edu



/s/    Michael A. Nagy

Michael A. Nagy
Pa. I.D. 208955
The Law Office of Michael A. Nagy, LLC
175 Shady Lane
Apollo, PA 15613
(724) 713-8228
michael@michaelanagylaw.com

Counsel for Plaintiff Jack Levin